IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

URS FEDERAL SUPPORT SERVICES, INC.,:

    Plaintiff                  : Case No. 3:13-CV-02632

    v.                      :

INTERNATIONAL ASSOCIATION OF   :
MACHINISTS AND AEROSPACE WORKERS,
AFL-CIO, DISTRICT LODGE 1,    : (Judge Richard P. Conaboy)
LOCAL LODGE 1717

                           :

    Defendant

**FILED**
**SCRANTON**

AUG 29 2014

PER_____
DEPUTY CLERK

**Memorandum**

We consider here a Motion to Enforce Settlement Agreement
(Doc. 20) filed by Plaintiff URS Federal Support Services, Inc.,
("URS"). This motion contends that Defendant International
Association of Machinists and Aerospace Workers, AFL-CIO, District
Lodge 1, Local Lodge 1717 (the "Union")has refused to acknowledge
that the parties settled the contract dispute underlying this
lawsuit and refused to cooperate in implementing the alleged
settlement. The motion has been fully briefed (Docs. 25, 27, and
28) by the parties and is ripe for disposition.

I.    **Background.**

This action arises from a contract between URS and the Union
involving work to be performed at the Tobyhanna Army Depot in
Tobyhanna, Pennsylvania. More specifically, on September 25, 2012
the Union filed a grievance on behalf of certain members who

functioned as electronic technicians at Tobyhanna Army Depot. The grievance asserted that these electronic technicians were improperly laid off without reference to seniority in derogation of the Union's contract with URS. (Doc. 1, ¶ 7). These layoffs occurred pursuant to a directive by the federal government (the beneficiary of all worked performed by the union employees under URS' direction) that URS reduce its workforce at Tobyhanna Army Depot by 75 employees. (Id., ¶ 8). URS contends that its contract with the federal government required that it lay off all Union employees who had not passed a certification test and, as such, the federal government's directive trumped the seniority rights of the affected Union employees.

The parties were unable to resolve the grievance and the matter was presented for the consideration of an arbitrator. (Id., ¶ 12). On October 1, 2013, the arbitrator issued an award which directed that all affected employees who were laid off while less senior co-workers were retained should be reinstated with full backpay and benefits. (Id., ¶¶ 13-15).

URS appealed to this Court on the basis that the award did not draw its essence from the parties' agreement and, as such, exceeded the arbitrator's authority. (Id., at ¶ 20). URS asks this Court to vacate the arbitrator's award. (Id., at ¶ 21).

After this lawsuit was filed, the parties agreed to mediate this matter in March of 2014. (Doc. 18). Before the parties

2

actually met with the mediator, URS filed the motion this Court now
considers.   For the reasons stated below, URS' Motion to Enforce
Settlement Agreement will be denied.

## II.   Legal Discussion.

It is axiomatic to the formation of a contract that the
parties reach a "meeting of the minds" as to all essential terms.
This principle is so well-entrenched in Anglo-American law that is
requires no citation.   While it is certainly true that a contract
need take no specific form nor level of specificity, before it can
be enforced the Court must be convinced that the parties reached
the requisite meeting of the minds on all essential terms and also
expressed a mutual intent to be bound thereby.

In the case sub judice, Plaintiff relies upon a hand-written
document styled variously as: "company response proposal" at Page
1; "company counter-response/proposal to open items" at Page 4; and
"second company counter/proposal" at Page 6.   (Doc. 20-1).
Significantly, none of these diverse stylings characterizes the
document as a "contract" or "agreement" or even a "tentative
contract" or "tentative agreement".   This document or documents is
replete with various arrows, checkmarks and other symbols that
simply defy interpretation by this Court.   Consequently, this
document lacks the requisite clarity to enable the Court to
conclude that a true meeting of the minds had been achieved on all

3

essential matters necessary to the formation of a contract between these parties.

The Court finds persuasive the Union's argument that the hand-written notes memorializing the negotiations conducted on December 5, 2013 merely "fleshed out a framework for possible resolution to the dispute...". (Doc. 27 at 6). While several of the emails that passed back and forth between the parties subsequent to December 5, 2013 might be read in isolation to suggest that a contract had been achieved, the emails (Doc. 20-2, Ex. 2; and Doc. 27, Exs. 1-3) are more indicative of a situation in which the parties were still negotiating material issues (e.g. identity of the eligible grievants, compensation to be paid to improperly "bumped" employees, and implementation of a training schedule to be provided by URS for eligible employees." In the Court's estimation, these unresolved issues were matters at the heart of the parties' dispute and serve to demonstrate that the negotiations conducted on December 5, 2013 had not produced an enforceable contract.

While unnecessary due to our conclusion that an agreement had not been reached, the Court also feels compelled to address URS' contention that rank-and-file ratification of the "contract" is unnecessary in this case. As URS itself acknowledges in its brief, "Union ratification is generally considered to be the last act necessary...to create a meeting of the minds in an enforceable agreement." (citing Mack Trucks, Inc., v. International Union et

4

al, 856 F2d. 579, 592 (3d. Cir. 1988) (citing NLRB v. Deauville Hotel, 751 F.2d 1562, 1569 n. 10 (Eleventh Cir. 1985). URS contends further that two cases - - Childers Products Company, 276 NLRB 709-711 (1985), and Valley Central Emergency Veterinary Hospital, 349 NLRB 1126, 1127 (2007)- - stand for the proposition that union ratification is not always necessary to the formation of a contract. This may be true but URS has not demonstrated that union ratification was not necessary here. Neither Childers nor Valley Central turned on whether a contract had been formed and language in these cases to the effect that union ratification need not be a condition precedent to the formation of a labor contract is gratuitous dicta in each. The Court has carefully reviewed these opinions and finds them factually dissimilar and of scant relevance to the instant case.

In Childers, supra, the central issue was whether the respondent company had standing to question whether the union's process to obtain ratification of its members was consistent with the union's internal procedures. The union's bylaws and constitution did not require that members ratify a contract negotiated by its bargaining committee. The NLRB simply held that the respondent had no standing to challenge the union's ratification process. The case was not about whether a union's prerogative to obtain ratification by its members could be ignored. As such, Childers does not support URS's argument here.

5

In Valley Central, supra, the NLRB again analyzed a situation in which the respondent company had negotiated a contract with the union and then refused to implement the contract due to an alleged failure by the union to follow its own ratification process. Citing Childers, supra, the NLRB held, once again, that the respondent company had no standing to challenge the ratification process. Discussion in Valley Central that employee ratification was not a condition precedent to the formation of the contract was a finding of fact in that case, not a statement that employee ratification may not be a condition precedent to the formation of a labor agreement.

Unlike the instant case, where a dispute exists as to whether an agreement was reached, neither Valley Central nor Childers were cases in which either party disputed that an agreement had been reached. Also, this Court has been provided no information regarding the ratification requirements of the Defendant Union's constitution and bylaws and will not simply presume that its bargaining committee had carte blanche to bind its members to a contract they had not reviewed. These stark factual differences render Valley Central and Childers useless to URS in support of its assertion that the Union had no right to insist upon ratification here.

## III. Conclusion.

For the reasons discussed above, the Court concludes that URS'

Motion to Enforce Settlement Agreement (Doc. 20) must be denied.
An Order consistent with this conclusion will be filed
contemporaneously herewith.

**BY THE COURT**

Honorable Richard P. Conaboy
United States District Court

Dated: _____